UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

DANNY MEREDITH,

Plaintiff,

vs.

SARA LEE FRESH, INC., a Delaware Corporation, BIMBO BAKERIES USA, INC., a Delaware Corporation, and EARTHGRAINS DISTRIBUTION, LLC, a Delaware limited liability corporation, and FLOWERS FOODS, INC., a Georgia Corporation, and DOES 1 through 20,

Defendants.

Case No: C 13-2649 SBA

**ORDER**

Docket 17, 24

The parties are presently before the Court on Defendants Bimbo Bakeries USA, Inc. ("Bimbo") and Earthgrains Distribution, LLC's ("Earthgrains")[1] motion to compel arbitration and to stay or, in the alternative, dismiss this action pending the completion of arbitration. Dkt. 19. Also before the Court is Defendant Flowers Foods, Inc.'s ("Flowers") motion to stay pending the completion of arbitration. Dkt. 24. Plaintiff Danny Meredith ("Plaintiff") opposes the motions. Dkt. 21, 28. Having read and considered the papers filed in connection with these matters and being fully informed, the Court hereby GRANTS Bimbo and Earthgrains' motion to compel arbitration and stay this action pending the completion of arbitration, and GRANTS Flowers' motion to stay pending the completion of arbitration, for the reasons stated below. The Court, in its discretion, finds these matters suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

[1] Earthgrains is the successor in interest to Defendant Sara Lee Fresh, Inc. ("Sara Lee"). Shepard Decl. ¶ 1, Dkt. 4.

## I. BACKGROUND

Plaintiff is an independent contractor providing distribution and delivery services for Sara Lee products, which include breads, bagels, buns, rolls, and other bakery products. Compl. ¶¶ 2, 12. On December 18, 2000, Plaintiff and "Defendants" entered into a Distribution Agreement ("DA"). Id. ¶ 12. Under the DA, Plaintiff has the exclusive right to distribute Sara Lee products in a territory located within the County of San Francisco. Id. ¶ 12, Exh. A. Plaintiff receives a percentage of the revenue generated by the accounts within his exclusive sales territory based on net sales and deliveries. Id. ¶ 17.

Since August 8, 2001, Earthgrains has been owned or controlled by Sara Lee, and "since 2001," has been involved in administering and/or "owning" the DA. Compl. ¶ 13. In or about October 2010, Bimbo "may" have purchased the DA. Id. ¶ 20. In or about October 2012, Flowers purchased the DA. Id. ¶ 14. Plaintiff does not know which entity currently "owns" the DA. Id. ¶ 15.

As of January 2011, Plaintiff "feels" that "Defendants" are competing with him in his exclusive sales territory by selling competing bread products, which he claims "eviscerates the value of [the DA] and destroys the consideration and the fruits and benefits [that he] intended to enjoy under the [DA]."[2] Compl. ¶ 25. Plaintiff asserts that Defendants possess "competitive information" about his "business," such as the "manner" of products to be delivered, store requirements, and store preferences," which "allows [them] to unfairly compete and breach the implied covenant of good faith and fair dealing inherent in . . . the [DA]." Id. In or about January 2011, Plaintiff notified "Defendants" of their breaches of the DA, but they "made no attempt towards resolution." Id. ¶ 24.

On April 22, 2013, Plaintiff commenced the instant action alleging ten claims for relief: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) unfair competition; (4) concealment; (5) money had and received; (6) failure to provide an

---

[2] In or about April 2011 and in or about December 6, 2012, Plaintiff discovered that "Defendants may have been distributing products in . . . [his] exclusive sales territory. . . ." Compl. ¶¶ 21-22.

accurate statement of wages in violation of California Labor Code § 226.8; (7) collecting or receiving employee wages in violation of California Labor Code § 221; (8) failure to pay wages in violation of California Labor Code §§ 558, 1182, 1193, 1194, 1197; (9) failure to provide meal and rest breaks in violation of California Labor Code §§ 226.7, 512, 558; and (10) failure to indemnify or reimburse for necessary expenditures or losses in violation of California Labor Code § 2802. See Compl. "[B]y this action, [Plaintiff] seeks to end Defendants' continued breaches of [his DA]." Id. ¶ 1. Plaintiff asserts that Defendants have breached the DA by "not providing promised exclusive territory," by allowing "other operators" within his exclusive territory, and by competing against him in his exclusive territory. Id. Plaintiff further asserts that Defendants' breaches of the DA "undermine[] the basic premise of [his] exclusive distribution territory." Id. According to Plaintiff, he has been damaged in excess of $1,000,000 as a result of Defendants' conduct. Id. ¶¶ 5, 26.

## II. LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), any party bound by an arbitration agreement that falls within the scope of the FAA may bring a petition in federal district court to compel arbitration in the manner provided for in the agreement. 9 U.S.C. § 4. The FAA requires the enforcement of an arbitration clause in a contract unless grounds exist "at law or in equity for the revocation of any contract." 9 U.S.C. § 2. When a dispute covered under an arbitration clause is brought in a suit in federal court, the court must stay the action upon application of any of the parties. 9 U.S.C. § 3.

The FAA reflects both a " 'liberal federal policy favoring arbitration agreements' and the 'fundamental principle that arbitration is a matter of contract.' " AT & T Mobility LLC v. Concepcion, 131 S.Ct. 1740, 1745 (2011) (citations omitted). The "principal purpose" of the FAA is to ensure that private arbitration agreements are enforced according to their terms. Id. at 1748. An arbitration agreement governed by the FAA is presumed to be valid and enforceable. See Shearson/Am. Exp., Inc. v. McMahon, 482 U.S. 220, 226-227 (1987). The party seeking to avoid arbitration bears the burden of demonstrating that

the claims at issue are unsuitable for arbitration. Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 91-92 (2000).

Generally, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986). At the same time, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). Given the presumption in favor of arbitration, a court should not deny an order to arbitrate "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT & T Techs., 475 U.S. at 650.

When faced with a petition to compel arbitration, the district court's role is a discrete and narrow one. "By its terms, the [FAA] 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.' " Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1985)) (emphasis added). "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." Chiron, 207 F.3d at 1130 (citations omitted).

The Supreme Court, however, has recognized that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." Rent-A-Center, West, Inc. v. Jackson, 130 S.Ct. 2772, 2777 (2010). While arbitrability is ordinarily decided by the court, both state and federal cases hold that this issue may be referred to an arbitrator if there is "clear and unmistakable" evidence that the parties intended that the question of arbitrability be decided by an arbitrator. See First Options of Chicago, Inc. v. Kaplan, 514

U.S. 938, 944-945 (1995); see also Poweragent, Inc. v. Electronic Data Sys. Corp., 358 F.3d 1187, 1191 (9th Cir. 2004); Dream Theater Inc. v. Dream Theater, 124 Cal.App.4th 547, 550-557 (2004).[3] To make this determination, courts conduct a "facial and limited" review of the contract in order to decide whether the parties "have in fact clearly and unmistakably agreed to commit the question of arbitrability to [an] arbitrator." Anderson v. Pitney Bowes, Inc., 2005 WL 1048700, at *4 (N.D. Cal. 2005) (Armstrong, J.). "The language of an arbitration agreement establishes whether the determination of arbitrability is for the court or delegated to an arbitrator." Fadal Machining Ctrs., LLC v. Compumachine, Inc., 461 F.App'x, 630, 632 (9th Cir. 2011) (citing First Options, 514 U.S. at 943). When the parties empower the arbitrator to decide arbitrability, the Court's role is narrowed from deciding whether there is an applicable arbitration agreement to only deciding whether there is a valid delegation clause. See Rent–A–Center, 130 S.Ct. at 2779.

"[W]here the parties' agreement to arbitrate includes an agreement to follow a particular set of arbitration rules - such as the AAA Rules - that provide for the arbitrator to decide questions of arbitrability, the presumption that courts decide arbitrability falls away, and the issue is decided by the arbitrator." Bank of America, N.A. v. Micheletti Family Partnership, 2008 WL 4571245, at *6 (N.D. Cal. 2008); Anderson, 2005 WL 1048700, at *2-4; Dream Theater, 124 Cal.App.4th at 557. If the court finds that the parties to the agreement did clearly and unmistakably intend to delegate the power to decide arbitrability to an arbitrator, then the court should perform a second, more limited inquiry to determine whether the assertion of arbitrability is "wholly groundless." Qualcomm Inc. v. Nokia Corp., 466 F.3d 1366, 1371 (Fed. Cir. 2006) (applying Ninth Circuit law) (citing Dream Theater, 124 Cal.App.4th at 553). If the court finds that the assertion of arbitrability is not

[3] "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state law principles that govern the formation of contracts." First Options of Chicago, 514 U.S. at 944. This is because arbitration itself "is a matter of contract." Rent–A–Center, 130 S.Ct. at 2776. Here, the parties do not dispute that the DA provides that California law is the relevant state law. In any event, California courts often look to federal law in deciding arbitration issues and "California law is consistent with federal law on the question of who decides disputes over arbitrability." Dream Theater, 124 Cal.App.4th at 553.

"wholly groundless," then it should stay the trial of the action pending a ruling on arbitrability by an arbitrator. Qualcomm, 466 F.3d at 1371. If the district court finds that the assertion of arbitrability is 'wholly groundless,' then it may conclude that it is not 'satisfied' under section 3, and deny the moving party's request for a stay. Id.

While the law clearly permits parties to delegate "questions of arbitrability" to an arbitrator, the parties cannot delegate the determination of whether the FAA confers authority on the district court to compel arbitration. In re Van Dusen, 654 F.3d 838, 843-844 (9th Cir. 2011) ("Section 4 [of the FAA, which provides a district court's authority to compel arbitration,] has simply no applicability where Section 1 exempts a contract from the FAA, and private contracting parties cannot, through the insertion of a delegation clause, confer authority upon a district court that Congress chose to withhold."). When confronted with an arbitration clause, the district court, as opposed to an arbitrator, must decide whether the agreement at issue is "of the kind" covered by the FAA. See id. at 843-845 (the district court must make an antecedent determination of whether the FAA confers authority on the court to compel arbitration, including whether § 1 exempts a contract from the FAA); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 401 (1967) (resolving "first question" of whether a consulting agreement "evidenc[ed] transactions in 'commerce' " under § 2 of the FAA ). "This is equally true where the arbitration clause at issue delegates an arbitrability question because '[a]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and *the FAA operates on this additional arbitration agreement just as it does on any other*.' " In re Van Dusen, 654 F.3d at 848 (emphasis in original) (quoting Rent–A–Center, 130 S.Ct. at 2777–2778).

Further, in the absence of clear and unmistakable evidence that a party agreed to arbitrate arbitrability with nonsignatories, the district court must decide whether the dispute is arbitrable. Kramer v. Toyota Motor Corp.,705 F.3d 1122, 1127 (9th Cir. 2013); see Sanford v. Memberworks, Inc., 483 F.3d 956, 962, n. 8 (9th Cir. 2007) (arguments that challenge whether a contract ever existed must be decided by the court before arbitration

can be ordered). As a general matter, a contractual right to arbitration "may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration." Britton v. Co-Op Banking Group, 4 F.3d 742, 744 (9th Cir. 1993). However, there are legal theories, such as agency and estoppel, in which nonsignatories to an arbitration agreement may compel arbitration. See Murphy v. DirecTV, Inc., 724 F.3d 1218, 1229-1234 (9th Cir. 2013); Comer v. Micor, Inc., 436 F.3d 1098, 1101 (9th Cir. 2006). "Traditional principles of state law" determine whether a "contract [may] be enforced by or against nonparties to the contract. . . ." Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 631 (2009); see Murphy, 724 F.3d at 1229.

## III. DISCUSSION

### A. Motion to Compel Arbitration

Plaintiff contends that Bimbo and Earthgrains' motion to compel arbitration should be denied because they are not signatories to the DA, and therefore cannot compel arbitration. Pl.'s Opp. at 2-4. In addition, Plaintiff contends that Bimbo and Earthgrains' motion to compel arbitration should be denied because the DA is not an agreement covered by the FAA. See id. at 7, 9. Specifically, Plaintiff argues that the DA is exempt from the FAA under § 1 of the Act, and that the FAA does not apply because the DA is not "a contract evidencing a transaction involving commerce" as required under § 2 of the Act. Id. Accordingly, while the agreement to arbitrate in the DA includes an agreement to follow a particular set of arbitration rules that provide for the arbitrator to decide questions of arbitrability, the Court must first determine two threshold issues: (1) whether Bimbo and Earthgrains, as nonsignatories to the DA, can compel arbitration; and (2) whether the FAA confers authority on the Court to compel arbitration, i.e., whether the DA is within the coverage of the FAA.

#### 1. Whether Nonsignatories to the DA Can Compel Arbitration

Plaintiff contends that Bimbo and Earthgrains cannot compel arbitration because they are not signatories to the DA. Pl.'s Opp. at 2-4. A litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract

law allows the litigant to enforce the agreement. Kramer,705 F.3d at 1128. Here, Bimbo and Earthgrains argue that they can compel arbitration, even though they are not signatories to the DA, under the doctrine of equitable estoppel.

"Equitable estoppel 'precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.' " Comer, 436 F.3d at 1101. Where a nonsignatory seeks to enforce an arbitration clause, the doctrine of equitable estoppel applies in two circumstances: (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are "intimately founded in and intertwined with" the underlying contract; and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and "the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement." Kramer,705 F.3d at 1128-1129. This rule reflects the policy that a plaintiff may not, on the one hand, seek to hold the nonsignatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a nonsignatory. Murphy, 724 F.3d at 1229; see also Metalclad Corp. v. Ventana Envtl. Organizational P'ship, 109 Cal.App.4th 1705 (2003) (reasoning that equitable estoppel applies where a plaintiff "agreed to arbitration in the underlying written contract but now, in effect, seeks the benefit of that contract in the form of damages . . . while avoiding its arbitration provision"); Turtle Ridge Media Group, Inc. v. Pacific Bell Directory,140 Cal.App.4th 828, 833 (2006). ("The rule applies to prevent parties from trifling with their contractual obligations.").

Here, a review of the complaint reveals that the claims alleged against the nonsignatory Defendants[4] are "intimately founded in and intertwined" with the duties and

[4] The complaint alleges that Earthgrains "is owned/controlled by Sara Lee and/or is involved in administering and/or owns the [DA]." Compl. ¶ 5. The complaint also alleges that Bimbo purchased certain assets of Sara Lee, "possibly including" the DA, and that Flowers bought the right to distribute bread from Bimbo in or about October 2012 and is currently administering and/or owning the DA. Id. ¶¶ 4, 6. In his opposition, Plaintiff

obligations established by the DA. Plaintiff's claims against Defendants, including his claims for breach of contract and failure to pay accrued wages, rely on and presume the existence of the DA, and are intertwined with the substance of the DA. Plaintiff, for his part, does not dispute that his claims arise out of the relationship created by the DA. Indeed, Plaintiff specifically alleges that "by this action, [he] seeks to end Defendants' continued breaches of [his DA]." Compl. ¶ 1. Accordingly, because Plaintiff's claims are intertwined with the DA, the Court finds that he is equitably estopped from preventing Bimbo and Earthgrains from enforcing the DA, including the dispute resolution provision. See Boucher v. Alliance Title Company, Inc., 127 Cal.App.4th 262, 271-273 (2005) (applying equitable estoppel where plaintiff relied on an employment agreement containing an arbitration clause to allege failure to pay accrued wages, breach of contract, and other claims that were intimately bound up with the substance of the contract); Metalclad, 109 Cal.App.4th at 1717-1718 (applying equitable estoppel where plaintiff's claims turned on an alleged breach of the underlying contract and fraud in obtaining it). Plaintiff cannot have it both ways; he cannot file claims against Bimbo and Earthgrains predicated on allegations that they violated the DA, but simultaneously deny them the ability to enforce the arbitration provision of that agreement.

**2. Whether the DA is Covered by the FAA**

**a. Section 2 of the FAA**

Plaintiff contends that the FAA is inapplicable because there is no "in fact" interstate commerce involved in this case as required by § 2 of the FAA. Pl.'s Opp. at 7. According to Plaintiff, there is no evidence that he was involved in activities constituting interstate commerce such as selling or distributing goods across state lines. Id.

"The FAA governs any written provision in a 'contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such

---

states that Bimbo bought the rights to the DA, Earthgrains owns the DA, and Flowers bought the DA. See Pl.'s Opp. at 3-4.

contract.' " Portland Gen. Elec. Co. v. U.S. Bank Trust Nat'l Ass'n, 218 F.3d 1085, 1089 (9th Cir. 2000).[5] "Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements. . . ." Moses H. Cone Mem'l Hosp., 460 U.S. 1, 24 1983. "If a party challenges the validity under § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under § 4." Rent–A–Center, 130 S.Ct. at 2778; see In re Van Dusen, 654 F.3d at 844-845 (the district court, as opposed to an arbitrator, must decide whether the agreement at issue is "of the kind" covered by the FAA).

The term "involving commerce" in § 2 of the FAA is the "functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause Power." Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56 (2003) (per curiam); see Allied–Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 273-274 (1995) (holding that the words, "involving commerce" in the FAA encompass more than activities within the flow of interstate commerce, and should be read as any contract "affecting commerce"). To fall within the FAA, the "contract evidencing a transaction involving commerce," in which an arbitration agreement is embedded, need not be one "within the flow of interstate commerce," nor one that, "taken alone," has "a substantial effect on interstate commerce." See Citizens Bank, 539 U.S. at 56.

Here, Plaintiff has failed to demonstrate that the DA does not affect interstate commerce. Bimbo and Earthgrains have proffered evidence showing that they sell and distribute baked goods in markets throughout the United States. Shepard Decl. ¶ 2, Dkt.

[5] Section 2 of the FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

10-2. Further, the DA provides that Sara Lee,[6] a Delaware corporation, has developed and or acquired the exclusive distribution rights to distribute and sell various fresh baked products throughout much of the United States, and that Plaintiff has purchased from Sara Lee the sole right to sell and distribute these products within a territory located within the County of San Francisco. See Compl., Exh. A. The DA further provides that Sara Lee agrees to sell and deliver products to Plaintiff, and that Plaintiff agrees to buy and accept certain quantities of the products for the purpose of supplying the "outlets" in his sales area. See id.

Plaintiff's contention that the DA does not involve interstate commerce is unpersuasive considering the evidence in the record and the broad interpretation given the FAA's "interstate commerce" provision. Courts construing the "transaction involving commerce" language of § 2 of the FAA have focused on the nature of the defendant's business. See, e.g., Nicholson v. Labor Ready, Inc., 1997 WL 294393, at *3 (N.D. Cal. 1997). The interstate nature of Bimbo and Earthgrains' businesses and their shipping of baked goods from out of state is sufficient to satisfy the interstate commerce element of the FAA. See Allied–Bruce, 513 U.S. at 281-282 (concluding that a termite protection contract "involved commerce" under the FAA based on the multi-state nature of Terminix and the shipping of materials from out-of-state). Plaintiff has not proffered any authority or legal analysis demonstrating that the DA does not "involve commerce" under § 2 of the FAA.

**b. Section 1 of the FAA**

Without citation to authority, Plaintiff contends that he is exempt from the FAA under the "employment definition." Pl.'s Opp. at 9. The Court construes Plaintiff's argument as contending that he is exempt from arbitration under § 1 of the FAA. This provision of the FAA, titled "exceptions to operations of this title," explicitly carves out a category of cases exempt from the Act. 9 U.S.C. § 1. It provides, in relevant part, that

[6] As previously noted, Earthgrains is the successor in interest to Sara Lee. See Shepard Decl. ¶ 1. Earthgrains and Bimbo are Delaware corporations with their principal place of business in Pennsylvania. Id. ¶¶ 2-3. Flowers is headquartered in Georgia and was formed under the laws of Georgia. Compl. ¶ 6.

"nothing herein contained shall apply to contracts of employment of . . . any other class of workers engaged in foreign or interstate commerce." Id. This exemption applies to "contracts of employment of transportation workers," Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119 (2001),[7] but does not apply to contracts establishing an independent contractor (rather than employment) relationship. See, e.g., Owner–Operator Independent Drivers v. Swift, 288 F.Supp.2d 1033, 1035-1036 (D. Ariz. 2003).

A district court has no authority to compel arbitration under § 4 where § 1 exempts the underlying contract from the FAA's provisions. See In re Van Dusen, 654 F.3d at 843-845 (holding that a district court, not an arbitrator, must determine whether an agreement for arbitration is exempt from arbitration under § 1 of the FAA as a threshold matter); Harden v. Roadway Package Sys., Inc., 249 F.3d 1137, 1140 (9th Cir. 2001) (holding that "[t]he district court lacked the authority to compel arbitration . . . because the FAA is inapplicable to [employees] who are engaged in interstate commerce").

Here, Plaintiff does not dispute that under the terms of the DA he is an independent contractor, not an employee. See Compl., Exh. A § 2.3. Instead, he contends that the complaint "alleges specific activities of Defendants that would indicate that there is an employment relationship based on the level of control exerted[;] . . . namely that Defendants controlled nearly every aspect of when, if, what quantities, and type of bread would be delivered." Pl.'s Opp. at 9. Plaintiff, however, does not discuss the specific activities he refers to, nor does he provide any legal analysis demonstrating that he is an employee. Rather, he simply directs the Court to Paragraphs 67-75 in the complaint. Id. Without elaboration, Plaintiff asserts that "Defendants . . . set Plaintiff's pricing on many

[7] In Circuit City, the Court reviewed the phrase "any other class of workers engaged in foreign or interstate commerce" to determine the scope of that exemption. The Court determined that the phrase does not refer to all workers in foreign or interstate commerce, but rather only "transportation workers." Circuit City, 532 U.S. at 112. It defined "transportation workers," as "those workers actually engaged in the movement of goods in interstate commerce." Id. at 112 (internal quotation marks and citations omitted).

occasions," and that he "believes" that a Superior Court Judge in Los Angeles "ruled that Sara Lee had improperly labeled distributors as independent contractors." Id.

The Court finds that Plaintiff has failed to establish that he is exempt from the FAA under § 1 of the Act. Plaintiff has not demonstrated that he is a "transportation worker" actually engaged in the movement of goods in interstate commerce. See Circuit City, 532 U.S. at 112 (Section 1 of the FAA has generally been limited to "those workers actually engaged in the movement of goods in interstate commerce."). Indeed, Plaintiff concedes that his job - which involves the sale of various bakery products within the County of San Francisco - does not require him to actually transport goods in interstate commerce. Further, Plaintiff does not argue that he is employed by a transportation company or that his position requires him to engage in the movement of goods in interstate commerce. Accordingly, given the liberal federal policy favoring arbitration, and considering that the § 1 exclusion is to be interpreted narrowly, Circuit City, 532 U.S. at 106, 119, the Court is not persuaded that Plaintiff is exempt from the provisions of the FAA under § 1 of the Act. Plaintiff has not proffered any authority or legal analysis establishing that § 1 of the FAA applies.

**3. Whether the Court or an Arbitrator Should Decide Arbitrability**

Having determined that nonsignatories Bimbo and Earthgrains can move to compel arbitration under the FAA, and that Plaintiff has failed to demonstrate that the DA is not covered by the FAA, the Court turns to the issue of whether the Court or an arbitrator should decide the issue of arbitrability. Here, Plaintiff argues that the arbitration clause is unconscionable for various reasons.[8] Pl.'s Opp. at 8-9. However, before reaching the merits of Plaintiff's arguments, the Court must determine whether the parties agreed to delegate questions of arbitrability, including the question of whether the arbitration agreement is unconscionable, to an arbitrator. In making this determination, the initial inquiry is whether the arbitration agreement evinces a clear and unmistakable intent that the

[8] Notably, Plaintiff does not contend that the delegation provision of the arbitration clause is unconscionable.

question of arbitrability is to be submitted to an arbitrator for resolution. If the Court finds that the parties to the DA clearly and unmistakably intended to delegate the power to decide arbitrability to an arbitrator, then the Court must determine whether the assertion of arbitrability is "wholly groundless."

**a. Clear and Unmistakable Intent**

The DA provides, in relevant part, as follows:

> **<u>ARTICLE 9.</u>**
> **<u>DISPUTE RESOLUTION</u>**
>
> **§ 9.1 <u>RESOLUTION OF DISPUTES</u>**: Any dispute between SARA LEE FRESH and Distributor arising out of the relationship created by this Agreement shall be subject to the dispute resolution provisions set forth below.
>
> **§ 9.2 <u>MEDIATION</u>**: In the event of any dispute, either party may initiate a mediation procedure within 10 days of the date on which facts respecting the dispute first come to such party's attention by submitting a written request for mediation to the Judicial Arbitration & Mediation Services, Inc. ('JAMS)' according to its procedures, or to any other mediation service mutually agreed to by the parties. . . . The mediation process shall begin promptly and shall be concluded within ten (10) business days of the day the request for mediation is made, unless the parties mutually agree otherwise. . . .
>
> **§ 9.3 <u>ARBITRATION</u>**: If the parties are unable to resolve the dispute through mediation, either party may avail itself of the right to seek relief from an arbitrator, by filing a complaint within twenty (20) days following the conclusion of the mediation process . . . . *Any dispute between the parties subject to this Article shall be decided by neutral, binding arbitration conducted in accordance with either the Commercial Arbitration Rules of the American Arbitration Association ('AAA') or the rules of . . . JAMS*. . . . The selection between AAA and JAMS rules shall be made by the party first filing for arbitration. . . . The arbitrator shall apply the substantive law specified by § 11.11 of this Agreement [i.e., California law], except that with respect to arbitration matters, the provisions of the [FAA] shall be controlling. . . .

Compl., Exh. A §§ 9.1-9.3 (emphasis added).

Under the plain language of the DA, any dispute between the parties subject to the dispute resolution procedures of the DA must be decided by arbitration in accordance with the AAA Rules or the JAMS Rules if the parties are unable to resolve the dispute through

mediation.[9] Rule R-7 of the Commercial Arbitration Rules of the AAA provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim. . . . The arbitrator shall have the power to determine the existence or validity of a contract which an arbitration clause forms a part."[10] Rule 11 of the JAMS Rules provides that "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter."[11]

Here, by explicitly agreeing that any dispute between the parties arising out of the relationship created by the DA must be decided by arbitration in accordance with either the AAA Rules or the JAMS Rules, the parties incorporated those rules into the DA. Accordingly, because the AAA Rules and the JAMS Rules both provide that an arbitrator has the power to determine his or her own jurisdiction, including the arbitrability of any claim, the Court finds that the parties "clearly and unmistakably" intended that an arbitrator

---

[9] The Court expresses no opinion as to whether the parties must first mediate their dispute before seeking relief from an arbitrator. Issues of procedural arbitrability, including whether a condition precedent to an obligation to arbitrate has been met, are for an arbitrator to decide. See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84-85 (2002) (citing John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557 (1964) (holding that an arbitrator should decide whether the first two steps of a grievance procedure were completed, where these steps are prerequisites to arbitration)); see also Dialysis Access Center, LLC v. RMS Lifeline, Inc., 638 F.3d 367, 383 (1st Cir. 2011) (holding that arbitrator should decide whether arbitration clause established condition precedent to arbitration requiring the parties to engage in good faith negotiation prior to arbitration).

[10] http://www.adr.org/aaa/faces/rules/searchrules/rulesdetail?doc=ADRSTG_004130&_afrLoop=5357557565743970&_afrWindowMode=0&_afrWindowId=ke65uhtg9_324#%40%3F_afrWindowId%3Dke65uhtg9_324%26_afrLoop%3D5357557565743970%26doc%3DADRSTG_004130%26_afrWindowMode%3D0%26_adf.ctrl-state%3Dke65uhtg9_380.

[11] http://www.jamsadr.com/rules-comprehensive-arbitration/#Rule 11.

decide the issue of arbitrability.[12] See Clarium Capital Management LLC v. Choudhury, 2009 WL 331588, at *5 (N.D. Cal. 2009) (Armstrong, J.) ("The incorporation of the AAA rules in the arbitration agreement is 'clear and unmistakable' evidence of the parties' intent to delegate the issue of arbitrability to the arbitrator."); see also Fadal Machining Ctrs., 461 Fed.Appx. at 632 (holding that the trial court did not err in concluding that the incorporation of the AAA's Commercial Arbitration Rules was a clear and unmistakable delegation of the issue of arbitrability to the arbitrator); Fallo v. High–Tech Inst., 559 F.3d 874, 880 (8th Cir. 2009) (the parties' incorporation of the AAA Rules is clear and unmistakable evidence that they intended to allow an arbitrator to answer the question of arbitrability); Qualcomm, 466 F.3d at 1373 (by agreeing to arbitrate under AAA rules, parties evidenced their unmistakable intent to delegate the issue of determining arbitrability to an arbitrator); Terminix Int'l Co. v. Palmer Ranch Ltd., 432 F.3d 1327, 1332 (11th Cir. 2005) ("By incorporating the AAA Rules . . . into their agreement, the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid."); Contec Corp. v. Remote Solution, Co., 398 F.3d 205, 208 (2d Cir. 2005) ("when . . . parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator"); Dream Theater, 124 Cal.App.4th at 557 (contract containing language stating that binding arbitration will be conducted in accordance with the AAA Rules is clear and unmistakable evidence of the parties' intent that the arbitrator will decide any dispute over arbitrability).

///

///

[12] When the contract clearly and unmistakably reserves issues of arbitrability for the arbitrator, the question becomes whether the provision delegating that gateway question is enforceable. Rent–A–Center West, 130 S.Ct. at 2778. The Court may only intervene if a party solely challenges the delegation provision and not the validity and/or enforceability of the entire arbitration agreement. See id. at 2778-2779. Here, because Plaintiff does not specifically challenge the validity of the delegation provision, the Court must treat it as valid. Id. at 2779.

**b. Wholly Groundless**

Because the Court has found that the parties to the DA clearly and unmistakably intended to delegate the power to decide arbitrability to an arbitrator, the remaining issue is whether Bimbo and Earthgrains' assertion of arbitrability is "wholly groundless. " Qualcomm, 466 F.3d at 1371. The "wholly groundless" inquiry allows the district court to prevent a party from "asserting any claim at all, no matter how divorced from the parties' agreement, to force an arbitration." Id. at 1373 n. 5. As set forth in Qualcomm, in conducting this inquiry:

> [T]he district court should look to the scope of the arbitration clause and the precise issues that the moving party asserts are subject to arbitration. Because any inquiry beyond a 'wholly groundless' test would invade the province of the arbitrator, whose arbitrability judgment the parties agreed to abide by in the [agreement], the district court need not, and should not, determine whether [plaintiff's claims] are in fact arbitrable. If the assertion of arbitrability is not 'wholly groundless,' the district court should conclude that it is 'satisfied' pursuant to section 3.

Qualcomm, 466 F.3d at 1374.

Here, the dispute resolution provision in the DA is broad. It provides that "[a]ny dispute between [the parties] arising out of the relationship created by [the DA] shall be . . . decided by neutral, binding arbitration" if the parties are unable to resolve the dispute through mediation. Compl., Exh. A §§ 9.1-9.3. A review of the complaint reveals that Plaintiff's claims, including his claims for breach of contract and breach of the implied covenant of good faith and fair dealing, appear to arise out of "the relationship created" by the DA. Indeed, the complaint alleges that "[b]y this action, [Plaintiff] seeks to end Defendants' continued breaches of [his DA]. . . ." Id. ¶ 1. The Court therefore finds that Bimbo and Earthgrains' contention that Plaintiff's claims fall within the DA's dispute resolution provision is not "wholly groundless." See Qualcomm, 466 F.3d at 1374 ("Because any inquiry beyond a 'wholly groundless' test would invade the province of the arbitrator, whose arbitrability judgment the parties agreed to abide by in the [agreement], the district court need not, and should not, determine whether [the appellants'] [claims] are in fact arbitrable."). Accordingly, Bimbo and Earthgrains' motion to compel arbitration is

GRANTED. This action is STAYED pending completion of arbitration pursuant to 9 U.S.C. § 3. See Anderson, 2005 WL 1048700, at *6 (If a case is referable to arbitration, it must be stayed pending completion of arbitration.).

**B. Motion to Stay Proceedings**

Flowers moves for a stay of this action pending the completion of arbitration. Because the Court has granted Bimbo and Earthgrains' motion to compel arbitration and to stay this action, Flowers' motion to stay pending the completion of arbitration is GRANTED.

## IV. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1. Bimbo and Earthgrains' motion to compel arbitration and to stay this action pending the completion of arbitration is GRANTED. The instant action is STAYED pending completion of arbitration.

2. Flowers' motion to stay pending the completion of arbitration is GRANTED.

3. The Clerk shall ADMINISTRATIVELY CLOSE the file.

4. The parties are instructed to submit status reports to the Court every six (6) months, apprising the Court of the status of the arbitration proceedings. The parties are advised that the failure to submit such status reports could result in dismissal of this action.

5. Upon completion of the arbitration proceedings, the parties shall jointly submit to the Court, within two weeks, a letter advising the Court of the outcome of the arbitration and request that the case be dismissed or that the case be reopened and a case management conference be scheduled.

6. This Order terminates Docket 17 and Docket 24.

IT IS SO ORDERED.

Dated: March 31, 2014

Saundra B. Armstrong

SAUNDRA BROWN ARMSTRONG
United States District Judge